**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| WARREN WAITE, JR., and § | |
| WARREN WAITE, III, § | |
|    Appellants, § | **CIVIL ACTION NO. H-11-1067** |
| § | |
| v. § | Bankruptcy Case No. 07-37770 |
| § | Adversary No. 08-3124 |
| LOWELL T. CAGE, Trustee, § | |
|    Appellee. § | |

**MEMORANDUM AND ORDER**

    Adversary Defendants Warren Waite, Jr. and Warren Waite, III appeal from the United States Bankruptcy Court's November 18, 2010 Memorandum Opinion Concerning Summary Judgment [Adversary Doc. # 60] and Final Judgment [Adversary Doc. # 61], and the Bankruptcy Court's January 4, 2011 Order [Adversary Doc. # 66] denying Appellants' Motion "For New Trial/Reopen/Reconsider." Appellants filed their Brief [Doc. # 6], Appellee filed his Brief [Doc. # 12], and Appellants filed a Reply Brief [Doc. # 13]. Having considered the parties' briefing, the designated bankruptcy record, and applicable legal authorities, the Court **affirms** the Bankruptcy Court's decision.

**I.    FACTUAL BACKGROUND**

    Debtors Marvin E. Moye, Joan Moye, and JMW Auto Sales Ltd., were in the used car business. Purchasers of vehicles from Debtors would often sign a Retail

Installment Sales Contract ("Installment Contract") with "JMW Auto Sales" listed as the lienholder. Debtors purported to sell Installment Contracts to investors, who were referred to as "Pool Investors," including Appellants. The purported sale was the subject of a "Master Purchase and Sale Agreement" ("Master Agreement"), which did not identify any specific Installment Contract being purchased and, instead, simply described the ongoing relationships among the parties with respect to any Installment Contract that might be purchased from time to time.

After an investor signed the Master Agreement, Debtors would assemble a pool of Installment Contracts with an aggregate current balance equal to the amount the investor agreed to invest. Debtors did not endorse any Installment Contracts to the Pool Investors, and Debtors did not execute any separate document transferring rights in any specific Installment Contract to the Pool Investors. Debtors did not modify the vehicle title to identify the Pool Investors as holders of a security interest in the vehicle, and JMW Auto Sales remained listed on the certificate of title as the lien holder.

The purchasers of the vehicles were not notified when their Installment Contracts were allegedly assigned to the Pool Investors. The Pool Investors did not file UCC-1 forms to perfect any security interest they may have obtained in the

Installment Contracts or in any stream of payment due under the Installment Contracts.

After an Installment Contract was allegedly transferred to a Pool Investor, Debtors continued to service the note, collect payments, and repossess vehicles in case of default. The Master Agreement provided for the execution of servicing agreements, but none were ever executed.

The Master Agreement provided that, if a vehicle purchaser defaulted under the Installment Contract, Debtors were required to substitute a different Installment Contract for the one in default. Debtors did not forward amounts collected under a specific Installment Contract to the Pool Investor to whom that contract was allegedly transferred. Moreover, when the amount collected under a pool of Installment Contracts was less than the amount due to the Pool Investor, Debtors used other funds to pay the Pool Investors the full amount they were owed.

In 2007, Debtors were unable to continue making payments to the Pool Investors. Debtors and some Pool Investors agreed that the Installment Contracts should be sold to a third party. Mid-Atlantic Finance Company ("Mid-Atlantic") agreed to purchase the Installment Contracts at a discounted value. The contracts with Mid-Atlantic were in Debtors' name with no representation that they were acting in an agency or other representative capacity.

Some of the funds received from Mid-Atlantic were transferred to the Pool Investors. Those transfers were made within ninety (90) days of the October 31, 2007, filing of an involuntary bankruptcy petition against JMW Auto Sales, and the November 6, 2007, voluntary bankruptcy petition filed by Debtors Marvin and Joan Moye. As a result, the Trustee sought to recover those payments as preferential transfers pursuant to 11 U.S.C. § 547.[1]

The Trustee moved for summary judgment on the § 547 claim. On November 18, 2010, the Bankruptcy Court granted the Trustee's motion. On December 3, 2010, Appellants filed a "Rule 9023/9024 Motion for New Trial/Reopen/Reconsider" [Adversary Doc. # 64], noting that on November 15, 2010, Appellant Waite Jr. received a reinstated license as required by the Texas Finance Code. The Bankruptcy Court denied Appellants' motion, and this appeal followed.

## II.   **STANDARD OF REVIEW**

The Bankruptcy Court's summary judgment ruling is reviewed *de novo*. *See In re OCA, Inc.*, 552 F.3d 413, 419 (5th Cir. 2008). This Court reviews the record to determine whether there are genuine issues of material fact and whether the prevailing party was legally entitled to summary judgment. *See Campbell v. Countrywide Home*

---

[1]   The Trustee asserted other bases for recovery of the payments, but the Bankruptcy Court's ruling is based on the payments being recoverable by the Trustee as preferential transfers under § 547.

*Loans, Inc.*, 545 F.3d 348, 352 (5th Cir. 2008) (citing *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 328 (5th Cir. 2007)).

A bankruptcy court's ruling on a motion to reconsider is reviewed for an abuse of discretion. *See In re Abby Lines Inc.*, 180 F. App'x 524, 525 (5th Cir. May 16, 2006) (citing *In re Stangel*, 68 F.3d 857, 859 (5th Cir. 1995) (per curiam)). To satisfy this stringent standard, the bankruptcy court's denial of reconsideration "must have been so unwarranted as to constitute an abuse of discretion." *Id.* at 526 (quoting *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 402 (5th Cir. 1981)).

"This Court may affirm if there are any grounds in the record to support the judgment, even if those grounds were not relied upon by the courts below." *In re Scotia Pacific Co., LLC*, 508 F.3d 214, 218-19 (5th Cir. 2007) (quoting *Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 245 (5th Cir. 2006)).

## III.   ANALYSIS

### A.   Summary Judgment Ruling

The Bankruptcy Code allows the trustee to avoid any transfer (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt; (3) made while the debtor was insolvent; (4) made within 90 days before the date a bankruptcy petition was filed; and (5) that enables the receiving creditor to receive more than it would

otherwise receive. *See* 11 U.S.C. § 547(b). In this case, the uncontroverted evidence establishes that the challenged transfer to Appellants was made within 90 days before the bankruptcy petitions were filed and that the transfer enabled Appellants to receive more than they would otherwise have received. There is a presumption that the debtor was insolvent during the 90-day period immediately preceding the date the bankruptcy petition was filed. *See* 11 U.S.C. § 547(f). The Trustee presented independent evidence to establish insolvency, and Appellants did not present competent summary judgment evidence that rebutted the Trustee's evidence or the presumption.

Appellants argue on appeal that the Bankruptcy Court erred in holding that, at the time Debtors purported to transfer Installment Contracts to Appellants, they did not possess a valid license to acquire retail installment contracts as required by the Texas Finance Code. Appellants argue also that the Bankruptcy Court erred in holding that the failure to have the required license rendered void the purported transfer of the Installment Contracts to them, in holding that the ownership of the Installment Contracts "reverted" to Debtors because the transfer to Appellants was void, and in holding that Appellants were creditors of Debtors.

The Bankruptcy Court correctly held that the purported transfer of the Installment Contracts to Appellants was void because it violated Texas law. The Texas Finance Code requires holders of vehicle retail installment contracts to be

licensed by the State. *See* TEX. FIN. CODE § 348.501(a). It is undisputed that neither Appellant held a valid license at the time of the purported transfer.[2] Therefore, under Texas law, Appellants did not have proper legal authority to acquire the Installment Contracts and any purported transfer of such contracts to them would have been void. *See Lewis v. Davis*, 199 S.W.2d 146, 148-49 (Tex. 1947); *Jack v. State*, 694 S.W.2d 391, 397 (Tex. App. – San Antonio 1985, writ ref'd n.r.e.). The Bankruptcy Court did not err in failing to conduct a detailed analysis of the legislative history of the Texas Finance Code because there was ample legal authority supporting the proposition that a contract is void where a party to the contract lacked a statutorily required license. *See, e.g., Cox v. Hilco Receivables, L.L.C.*, 726 F. Supp. 2d 659 (N.D. Tex. 2010) (Texas Finance Code provision); *Denson v. Dallas County Credit Union*, 262 S.W.3d 846 (Tex. App. – Dallas 2008, no pet.) (Transportation Code provision); *M.M.M., Inc. v. Mitchell*, 153 Tex. 227, 265 S.W.2d 584 (Tex. 1954) (professional engineer licensing provision of Texas Civil Statutes).

Because any attempt to transfer the Installment Contracts to Appellants was invalid, no present transfer occurred and Appellants did not own the Installment Contracts for purposes of the § 547 analysis. The Bankruptcy Court did not conclude

---

[2] Appellants' argument that Waite Jr. subsequently obtained a reinstated license that applied retroactively is discussed in connection with Appellants' appeal from the denial of their motion to reopen the summary judgment record and reconsider.

that the Installment Contracts "reverted" to Debtors as argued by Appellants. Instead, the Bankruptcy Court noted that no present transfer of the Installment Contracts occurred and, as a result, Appellants only invested money with Debtors and thus became creditors of Debtors before the bankruptcy petitions were filed. Based on the summary judgment evidence and the applicable law, the transfer to Appellants of funds received by Debtors from Mid-America to Appellants constituted a transfer to or for the benefit of a creditor for or on account of an antecedent debt. The Bankruptcy Court correctly held that there was no genuine issue of material fact and that the Trustee was entitled to summary judgment on the § 547 claim.

### B. Denial of Motion to Reopen/Reconsider[3]

Appellants argue that the Bankruptcy Court should have reopened the summary judgment record to allow them to present "newly discovered evidence" that Waite Jr. had subsequently obtained reinstatement of his license, and that the reinstatement was effective retroactively. Motions to reconsider based on newly discovered evidence "will not be granted unless the movant shows: (1) the facts discovered are of such a nature that they would probably change the outcome; (2) the facts alleged are actually newly discovered and could not have been discovered earlier by proper diligence; and

---

[3] Appellants moved pursuant to Bankruptcy Rule 9023, which applies Rule 59 of the Federal Rules of Civil Procedure, and Bankruptcy Rule 9024, which applies Rule 60 of the Federal Rules of Civil Procedure.

(3) the facts are not merely cumulative or impeaching. *Voisin v. Tetra Techs., Inc.*, 2010 WL 3943522, *3 (E.D. La. Oct. 6, 2010) (citing *Infusion Res., Inc., v. Minimed, Inc.,* 351 F.3d 688, 696-697 (5th Cir. 2003)). The proffered evidence must be "newly discovered" rather than "newly created." *See Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 412 (7th Cir. 2006); *see also Baucom v. Sisco Stevedoring, LLC*, 2008 WL 2428930, *5 (S.D. Ala. June 12, 2008); *Repurchase Corp. v. Bodenstein*, 2008 WL 4379035, *8 (N.D. Ill. Mar. 24, 2008) (holding that "Rule 59 motions are not intended to give parties the opportunity to relitigate issues with newly created evidence"); *In re Griffin*, 2004 WL 5846711, *3 (Bkrtcy N.D. Ga. May 10, 2004) (holding that parties may not use Rule 60(b) to supplement evidence with "newly created evidence").

In this case, there is no dispute that, on the date the bankruptcy petition was filed, the date the motion for summary judgment was filed, and the dates briefs regarding the summary judgment motion were filed, neither Waite Jr. nor Waite III held a valid license to acquire a retail installment contract. On those dates, there was and could have been no "evidence" that Waite Jr. or Waite III held a valid license as required by the Texas Finance Code because they did not hold such a license. Appellants did not "discover" evidence regarding the licenses but, instead, created such evidence when Waite Jr. applied for and obtained a reinstated license on

November 15, 2010.  The Bankruptcy Court did not abuse its discretion in declining to reopen the summary judgment record to permit Appellants to submit this "newly created" evidence.[4]

Additionally, the fact that Waite Jr. obtained a retroactive license would not change the Bankruptcy Court's summary judgment ruling.  Section 502(b) of the Bankruptcy Code provides that the rights of holders of claims and interests are fixed as of the Petition Date.  *See* 11 U.S.C. § 502(b); *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 527 (5th Cir. 2004).  In this case, the involuntary bankruptcy petition against JMW Auto Sales was filed on October 31, 2007.  The Moyes filed their voluntary bankruptcy petition on November 6, 2007.  There is no evidence that either Appellant held a valid license to acquire retail installment contracts on either of those two dates.  Although in November 2010 Waite Jr. obtained a reinstated license, retroactively effective to September 2002, that retroactive license did not alter Appellants' rights that became fixed in 2007.

The Bankruptcy Court did not abuse its discretion by denying Appellants' motion to reopen the summary judgment record and reconsider the prior ruling

---

[4] The Bankruptcy Court signed its Memorandum Opinion Concerning Summary Judgment and Final Judgment on November 18, 2011.  That same day, at 4:30 p.m., Appellants filed a Motion to Supplement Summary Judgment Evidence [Adversary Doc. # 59].

because Appellants' proffered evidence was not "newly discovered" and would not alter the summary judgment ruling.

## IV.     CONCLUSION

Having reviewed the full record in this case and having applied governing legal authorities, the Court concludes *de novo* that the Bankruptcy Court's summary judgment in favor of Appellee on the § 547 preference claim was correct in all respects.  The Court also concludes that the Bankruptcy Court did not abuse its discretion in denying Appellants' motion to reopen the summary judgment record and reconsider the ruling.  Accordingly, the Bankruptcy Court's Memorandum Opinion and Final Judgment are **AFFIRMED**, as is the Bankruptcy Court's Order denying Appellants' motion to reopen/reconsider.  The Court will issue a separate final order.

SIGNED at Houston, Texas this **27th** day of **May, 2011**.

_____
Nancy F. Atlas
United States District Judge